IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
Rome Division

| ALETIA MOON and ZACHARY CARRIER | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE NO. 4:08-CV-021-HLM |
| ADVANCED MEDICAL OPTICS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
ON ISSUE OF GENERAL CAUSATION AND MOTION TO EXCLUDE
TESTIMONY OF CLAUDE ANGER AND OLIVER SCHEIN

Statement of Facts

On March 16, 2007, the Center for Disease Control ("CDC") launched an investigation into a reported increase in occurrences of acanthamoeba keratitis. (CDC Memorandum from Jennifer Verani, November 9, 2007, Exhibit "1") On May 23, 2007, the CDC determined a significant association between Complete MoisturePLUS ("CMP") and the occurrence of acanthamoeba keratitis ("AK") based on interviews of patients with the disease. (CDC Memorandum from Jennifer Verani, November 9, 2007, Exhibit "1") Based on the CDC study, 56% of the contact users who developed AK used CMP even though this solution

comprised approximately 7% of the market share for multipurpose solutions. (Certified Copy of Powerpoint Presentation: Multistate Outbreak of Acanthamoeba Keratitis Associated with Use of a Contact Lens Solution, June 10, 2008, Verani, Exhibit "2") The study proved that a contact lens wearer was 17 times more likely to contract AK when using CMP than any other solution. (Certified Copy of Powerpoint Presentation: Multistate Outbreak of Acanthamoeba Keratitis Associated with Use of a Contact Lens Solution, June 10, 2008, Verani, Exhibit "2") John Lally, the corporate representative for AMO, admitted that the CDC study showed a link between the launch of CMP into marketplace and a dramatic increase in the cases of AK and admitted that the use of CMP created a significant increased risk to the consumer of developing AK. (Deposition of John Lally, p. 823 ln.11 through p.824 ln.21; Lally Depo. p. 831 lns.11 through 23) Plaintiff's Expert Dr. Michael Miller agrees that CMP caused or contributed to consumers developing AK. (Affidavit of Dr. Michael Miller, Exhibit "3")

Defendant's expert Oliver Schein admits that the CDC study was performed appropriately and that its conclusions are sound. (Deposition of Oliver Schein p. 26 ln. 9 through p. 27 ln.4) According to Schein, Complete MoisturePLUS was responsible for approximately 55% of the pre-recall acanthamoeba keratitis cases even though CMP only had approximately 10% of the market share. (Schein Depo. p.28 ln.13 through p. 34 ln.5) If CMP was not defective and was not a contributing

factor to the development of AK and there was some other cause for the acanthamoeba keratitis outbreak, it would be expected that the cases of AK in CMP users would mimic its market share and comprise about 10% of the pre-recall cases. (Schein Depo. p. 28 ln.13 through p. 34 ln.5) If CMP had not been in the marketplace in 2006 and 2007, more than half the cases of AK would never have occurred. (Schein Depo. p. 56 ln.15 through p. 58 ln.12) After the recall, there was a 50% reduction in the number of AK cases. (Schein Depo. p. 69 ln.8 through p. 70 ln.17) The removal of CMP from the marketplace is the sole reason for this 50% reduction. (Schein Depo. p. 69 ln.8 through p. 70 ln.17) If CMP was not a contributing cause to developing AK, there would have been NO reduction in acanthamoeba keratitis cases after the recall. (Schein Depo. p. 69 ln.8 through p. 70 ln.17)

Schein admits that CMP is a contributing factor to the development of AK in some consumers. (Schein Depo. p. 67 lns.2 through 20) Schein admits that when a product shelters and encourages the survival of an organism, it tends to be regarded as a causative factor. (Schein Depo. p. 65 lns.15 through 19) Schein admits that CMP encourages the survival of acanthamoeba. (Schein Depo. p. 67 lns. 2 through 20) According to Schein, MoistureLoc, a contact lens solution manufactured by Baswuch & Lomb, was found to have a relative risk of developing fusarium keratitis of 13 times after an outbreak of fusarium keratitis, and Schein believes

there is likely a causative relationship between MoistureLoc and fusarium keratitis. (Schein Depo. p. 61 ln.16 through p. 66 ln.9) However, Schein claims that the only causative factor for development of AK is the parasite itself and wearing contacts. (Schein Depo. p. 48 lns.9 through 16) Schein does not have any numeric value whereby a risk factor becomes a causative factor. (Schein Depo. p. 58 ln.17 through p. 59 ln.8) As such, Schein cannot say how may times more of a risk CMP would have to be for causing AK before it could be considered to "cause" AK (Schein Depo. p. 58 ln.17 through p. 59 ln.9)

Argument and Citation of Authority

I.     CDC Study Establishes General Causation as a Matter of Law

When proceeding under a negligence or strict liability theory of recovery, proximate cause is an element of a plaintiff's case. Powell v. Harsco Corp., 209 Ga. App. 348, 350, 433 S.E.2d 608 (1993). The plaintiff must prove both general and specific causation. "General causation is the capacity of a product to cause injury; specific causation is proof that the product in question caused the injury of which the plaintiff complains." Jack v. Glaxo Wellcome, Inc., 239 F.Supp.2d 1308, 1321 (N.D.Ga. 2002). In the present case, the capacity of Complete MoisturePLUS ("CMP") to cause acanthamoeba keratitis ("AK") is established as a matter of law

by the CDC study and entitles plaintiff to summary judgment on the issue of general causation.

The CDC study found that CMP has a relationship to causing AK whereby it is 17 times more likely to cause AK than any other solution. Dr. Oliver Schein, Defendant's expert in epidemiology, does not dispute the findings or conclusions of the CDC study. (Schein Depo. p. 26 ln.9 through p 27 ln.4) Schein admits that there is a relationship between the use of CMP and the development of AK in contact users. (Schein Depo. p. 28 ln.13 through p. 34 ln.5; p. 56 ln.15 p. 58 ln.12; p. 67 lns.2 through 20; p. 69 ln.8 through p .70 ln.17) Since it is undisputed that CMP can cause the development of AK, Plaintiff is entitled to summary judgment on the issue of general causation.

II. Anger and Schein's Conclusion that CMP is a Risk Factor and Not a Causative Factor Should be Excluded

Despite the fact that CMP increases the risk of developing AK by 17 times as compared to other contact lens solutions, Schein (and Anger in his expert report) has reached the opinion that CMP is a "risk factor" for developing AK and not a "causative factor". Schein's testimony should be excluded as an expert witness because his proposed expert testimony does not meet the standards under Federal Rules of Evidence 702. See also Daubert v. Merrell Dow Pharmaceuticals, Inc.,

509 U.S. 579, 113 S. Ct. 2786 (1993). Federal courts have adopted a rigorous three-part inquiry to determine the admissibility of expert testimony:

(1) the expert is qualified to testify competently regarding the matters he intends to address;

(2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and

(3) the testimony [is helpful in that it] assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1107 (11th Cir. 2005) (quoting United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004) (en banc)

Rule 702 places a duty on district courts to acts as "special gatekeepers" to insure that speculative and unreliable opinions do not reach the jury. See Daubert, 509 U.S. 579, 589 n.7, 113 S. Ct. 2786. Daubert's gatekeeping requirement is of particular importance since an expert's opinion can often be extremely difficult to evaluate, yet have a powerful, and potentially misleading, impact on the jury. See Frazier, 387 F.3d at 1260. The court is "charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand."

Corwin v. Walt Disney Co., 475 F.3d 1239, 1250 (11th Cir. 2007). The proponent of expert testimony always bears the burden to show that his expert is qualified to testify competently regarding the matters he intends to address; the methodology by which the expert reached his conclusions is sufficiently reliable; and the testimony assists the trier of fact. Dukes v. Georgia, 428 F. Supp. 2d 1298, 1309 (quoting Frazier, 387 F.3d at 1260); see also Daubert, 509 U.S. at 593 n.10. Thus, Defendant must show that Anger and Schein's opinions satisfy Rule 702.

"An expert's qualification and experience alone are not sufficient to render his opinions reliable." Dukes, 428 F. Supp.2d at 1309. Defendant has the burden of proving that Schein's expert opinions are reliable and cannot do so here. Courts have identified several factors for testing reliability: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir.2005); Frazier, 387 F.3d at 1262. The Court must find that proffered expert testimony is properly grounded, well-reasoned, and not speculative before it can be admitted. Fed. R. Evid. 702 Comm. Notes; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999) (explaining that factors bearing on reliability may vary depending on the field).

In the present case, Schein has no explanation for how to differentiate a risk factor from a causative factor. He admits that CMP played a role in causing AK and was a contributing factor to numerous users contracting the disease. He admits that CMP causes a user to be 17 times more at risk to develop AK than any other contact solution. He admits that the CDC study correctly linked CMP to contact users developing AK. However, out of thin air, he draws a distinction between CMP as a "risk factor" and a "causative factor" to argue that it does not "cause" AK. When pressed as to how great a risk CMP would have to be for it to be a causative factor of AK, Schein cannot point to any scientific number that differentiates risk factors from causative factors.

> Q  Now, is there some number of percentage of risk that, if it was associated with CMP, would then bring me to the point of saying that it was a causative factor? In other words, that the risk factors, instead of 17 times, was 50 times or 100 times, I mean, is there any number that then brings CMP into being a causative factor?
>
> A.  So if you're saying that using just a case -- you know, the one or two case control studies, that is

there a magic number which a risk factor becomes

a cause, I'd say no.

(Schein Depo., p. 48 ln.17 through p. 49 ln.8) Schein simply has no basis for his testimony. It is just his feeling that CMP does not really cause AK.

Schein also attempts to differentiate CMP's relationship to AK with MoistureLoc's relationship with fusarium. According to Schein, MoistureLoc is more like a causative factor to fusarium, even though it only has a relative risk of 13 times as compared to the 17 times found between CMP and AK. (Schein Depo. p. 61 ln.16 through p. 63 ln.10) When pressed as to why MoistureLoc was more of a causative factor than CMP, Schein responded that MoistureLoc had a special relationship to fusarium and protected it from being destroyed by the disinfectant in the solution. (Schein Depo. p. 64 ln.15 through p. 65 ln.19) But later Schein also admitted that CMP has a special relationship with acanthamoeba that keeps CMP from killing it.

Q. Now, in situations where there were no risk factors other than the use of Complete Moisture Plus, and if the Complete Moisture Plus gave protection -- some part of its formula gave protection to the acanthamoeba, wouldn't it also be a contributing factor?

A. Well, in some way we know, because of the epidemiologic studies, that exposure to Complete Moisture Plus increased the risk of getting the disease. So I think that conclusion is solid and I accept that conclusion. If you then ask me do I understand why that is the case, then I would say I don't really understand why. So in some way the use of that product gave acanthamoeba some ecologic advantage compared to the use of other solutions, but I don't know exactly what it was.

(Schein Depo. p. 67 lns.2 through 20) Schein's testimony is unverifiable, unsupported, contradictory and does not even make sense.

The ridiculous nature of Schein's testimony is evident from his claim that the only causative factor for developing AK, other than the organism itself, is using contacts. (Schein Depo. p. 48 lns.9 through 16) That is like arguing that when someone dies from a defective seat belt, the only causative factor is driving the car. After all, if you do not drive the car, there would be no injury, and being in a car is the highest risk factor for being injured in an automobile wreck. But such an opinion fails to address the real issue in the case.

Epidemiology is the study of disease patterns to attempt to define a relationship between a disease and a factor suspected of causing it. In re Joint Eastern & Southern District Asbestos Litigation, 52 F.3d 1124, 1128 (2nd Cir. 1995) Epidemiologists speak in the statistical language of risk and probabilities and determine if the relative risk from exposure to a causative factor will lead to a certain disease. Id. at 1128. In the present case, the CDC study showed that use of CMP (causative factor) creates a relative risk (17 times greater) of developing AK (the disease). The CDC study proves as a matter of law that CMP has the capacity to cause AK (general causation). Schein cannot on the one hand embrace the CDC study as being accurate and sound and on the other hand substitute his own terminology to change the conclusions on the CDC study from CMP being a cause to a risk. Whatever you call it, it is sufficient to prove general causation, and there is no evidence to the contrary.

Anger and Schein's opinions are the very type of ad hoc, unverifiable opinions that Daubert and Rule 702 are designed to prohibit. Under Daubert and Rule 702, experts are not allowed to simply self-validate the reliability of their own testimony. "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." Dukes, 428 F. Supp. 2d at 1309 (quoting Cook, 402 F.3d at 1111). "An expert's unexplained assurance that his or her opinions rely on

accepted principles fares no better." Id. A trial court should "exclude expert testimony that is imprecise and unspecific or whose factual basis is not adequately explained." Cook, 402 F.3d at 1111; see also McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004)(characterizing expert's testimony as "too vague" and noting that "[a] mere guess that earlier treatment would either have improved [plaintiff's] condition or rendered it the same simply fails the tests for expert opinion"); Frazier, 387 F.3d at 1266 (excluding vague testimony). Anger and Schein have no basis to differentiate a risk factor from a causative factor and that is not an accepted principle of epidemiology. Their opinions are misleading and unsound and must be excluded to avoid unfairly prejudicing the jury.

In addition to the problems with their methodology, the expert testimony of Anger and Schein are not helpful to the jury. To be admissible under Rule 702, expert testimony must also be relevant, helpful, and assist the trier of fact. United States v. Frazier, 387 F.3d 1244, 1263(11th Cir. 2004) (en banc). "In order to satisfy this requirement, a court must ensure that 'the proposed expert testimony is relevant to the task at hand, i.e., that it logically advances a material aspect of the proposing party's case.'" Dukes, 428 F. Supp. 2d at 1309-10. Where an expert's opinions are based on faulty assumptions or misapplications of the governing standards, the testimony is neither helpful nor relevant. See Corwin v. Walt Disney

Co., 475 F.3d 1239, 1250 (11th Cir. 2007)(excluding expert reports where experts misapplied applicable industry standard).

Anger and Schein's labeling of CMP as a "risk factor" rather than a "causative factor" will not help a jury decide whether CMP causes AK. The important facts are that (1) CMP is 17 times more likely to cause AK than any other solution, (2) CDC found a link between CMP and AK, (3) CMP accounted for 56% of the pre-recall cases of AK even though it only had approximately 7% to 10% of the market share, (4) after the recall, the removal of CMP from the market accounted for a 50% reduction in the number of AK cases. A jury does not need an expert opinion as to whether CMP is a risk factor or a causative factor to decide if CMP causes AK. They can make that decision from the facts. The expert testimony of Anger and Schein is not helpful, only misleading. Their opinions should be excluded from this trial.

## Conclusion

Accordingly and for the foregoing reasons, Plaintiffs respectfully request that their motion for partial summary judgment on the issue of general causation be granted and that the testimony of Claude Anger and Oliver Schein be excluded.

This 25th day of February 2010.

Respectfully Submitted,

**FRIED ROGERS GOLDBERG, LLC**


By:   */s/ Michael L. Goldberg*
Michael L. Goldberg
Georgia Bar No. 299472

3399 PEACHTREE ROAD, N.E.
SUITE 325
ATLANTA, GEORGIA 30326
404-591-1800
404-591-1801(Fax)

CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1C. This brief has been prepared in Times New Roman font, 14 point.

Dated on February 25, 2010.

                                       FRIED ROGERS GOLDBERG LLC

                                       */s/ Michael L. Goldberg*
                                       MICHAEL L. GOLDBERG
                                       GEORGIA STATE BAR NUMBER 299472

                                       ATTORNEY FOR PLAINTIFFS

3399 PEACHTREE ROAD, N.E.
SUITE 325
ATLANTA, GEORGIA 30326
404-591-1800
404-591-1801(Fax)

# CERTIFICATE OF SERVICE

I hereby certify that I have on this day electronically filed the foregoing **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ISSUE OF GENERAL CAUSATION AND MOTION TO EXLUDE TESTIMONY OF CLAUDE ANGER AND OLIVER SCHEIN** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

Z. Ileana Martinez
Thompson Hine LLP
One Atlantic Center
1201 West Peachtree Street, NW
Suite 2200
Atlanta, Georgia 30309-3449

Dated on February 25, 2010.

FRIED ROGERS GOLDBERG LLC

*/s/ Michael L. Goldberg*
MICHAEL L. GOLDBERG
GEORGIA STATE BAR NUMBER 299472

ATTORNEY FOR PLAINTIFFS

3399 PEACHTREE ROAD, N.E.
SUITE 325
ATLANTA, GEORGIA 30326
404-591-1800
404-591-1801(Fax)